## Case No. 3,134.

### CONSOLIDATED FRUIT-JAR CO. v. WHITNEY et al.

[2 Ban. & A. 375.][1]

Circuit Court, D. New Jersey. Aug., 1876.

PATENTS—FRAUDULENT GRANT BY TRUSTEE — NOTICE—RES JUDICATA—CONSOLIDATION OF CORPORATIONS — ACTION TO ENFORCE AGREEMENT — DEFENSES.

1. Three letters patent were granted to Mason, who afterwards parted with the title thereto. Mason entered in an agreement with the legal owners of the patent and others, for the purpose of effecting the incorporation of the complainant; and agreed to use his best efforts in securing extensions of the patents for the use and at the expense of the complainant, in consideration of which he was to be paid $5000, it being agreed that all extensions or renewals of the patents should be transferred to and form a part of the assets of the complainant corporation. Mason being one of the incorporators, and the principal officer of the complainant, and an application in his name as inventor being deemed necessary in order to procure extensions of the patents, the complainant assigned them to him with the distinct agreement that the extensions when obtained should be assigned to the complainant. Mason obtained the extensions, and the complainant paid him the $5000 and his expenses, in pursuance of the agreement. But while he was the legal owner of the patents and held the title thereto in trust for the complainant, he granted a license to one Chase, under two of the patents, giving the right to make and use the invention described in the patents, together with all extensions and renewals thereof. Chase assigned this license to one Johnson, who afterwards transferred it to the Standard Union Manufacturing Company. That company entered into an agreement with the defendants Whitney, by which it granted to them the right of manufacturing under the patents. *Held*, that it would be inequitable, upon any mere technical grounds, to relieve Mason or those claiming under him from the full surrender of the property which he had agreed to give up, and from the strict performance of the duties and services which he undertook to render in consideration of the pecuniary benefits which he received.

2. It is doubtful whether the complainant ought to be permitted to hold the defendants Whitney responsible for the use of the patents before they received actual notice of its claim, and of the lack of title in Mason, but after such notice, the defendants proceeded at their peril, and assumed the legal responsibility of their acts.

3. Where a court has decreed the title to a patent to be in the complainant, in an action brought for the purpose of determining the rights of the parties, such decree makes that question res adjudicata, and the defendants to the suit will be estopped from controverting it in another suit, so long as such decree stands unreversed.

4. Where certain parties representing the interests of different rival companies, enter into an agreement, to incorporate a new company, to which shall be transferred the property of the old companies, and that thereupon the old companies shall be dissolved: *Held*, that it was no defence to an action brought by the new company, to show that the old companies did not join in the certificate of incorporation of the new company.

5. Where an agreement provides for the transfer of property to a company not in existence, the objection that the company after it is organized cannot maintain an action to enforce its rights against the parties to the agreement, because such agreement is not binding upon the parties to it, nor on the company when it is afterwards organized, can have no force, the office of the agreement in these proceedings being principally, if not only, to indicate the intention of the parties in the formation of the new company and to show that certain of the defendants are estopped from claiming certain property which it had been agreed for a valuable consideration should be conveyed to the complainant. The agreement will not be treated as the ground of the right of the company to maintain its action, but as evidence of its right.

[In equity. Bill by the Consolidated Fruit-Jar Company against Thomas H. Whitney, Samuel A. Whitney, John L. Mason, and the Standard Union Manufacturing Company.]

A. Q. Keasbey. for complainant.
Abram Browning, for defendants.

NIXON, District Judge. The bill of complaint was filed in this case, originally, against Thomas H. Whitney and Samuel A. Whitney. It sets forth, in substance, that on the 30th of March, 1858, one John L. Mason, obtained from the United States, letters patent, No. 19,786 for "an improved lathe chuck;" that on the 23d of November, of the same year, letters patent No. 22,129 for "improvement in moulds for making bottles" were granted to him, and on the following 30th of November, letters patent, No. 22,186, for "improvement in screw neck bottles," the right and title to which several patents, by divers mesne assignments, became vested in the complainant; that by a certain agreement in writing, bearing date December 12th, 1871, executed by the said Mason and others, and duly delivered to the complainant, for the purpose of effecting the organization and incorporation of the complainant, the said Mason agreed to use his best efforts and services and influence to procure a renewal of all of said patents, for the use, and at the expense, of the complainant, in consideration of which the complainant covenanted to give to him its promissory note for five thousand dollars, payable in sixty days after date, the said Mason further agreeing, that all such renewals of the said patents should be transferred to, and form a part of the assets of the complainant corporation.

It further alleges, that in pursuance of the terms of the said agreement, the complainant gave to Mason its promissory note for five thousand dollars, which was afterwards paid at maturity, and also paid to him the sum of four thousand dollars for his expenses in obtaining the renewals and extensions of the said patents; that the said Mason, being one of the incorporators, and the principal officer of the complainant corporation, and an application in his name, as inventor, being deemed necessary in order

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

to procure the said extensions, the complainant made an assignment of the said patents to him, as follows: No. 19,786 on the 27th of January, 1872; and Nos. 22,129 and 22,186 on the 19th of November, 1872, said assignments being made for the sole purpose of facilitating the procuring of the renewals or extensions thereof, and with the distinct agreement, that the extensions, when obtained, should be assigned to the complainant; that in the month of March, 1872, Mason obtained from the commissioner of patents, an extension for seven years, from March 30th of that year, for the letters patent, No. 19,786, which extended term was duly assigned to the complainant, May 2d, 1872; that in the month of November of the same year, he also procured the extension of the letters patent, No. 22,129, for seven years, from November 23d, and of letters patent, No. 22,186, for seven years, from November 30th, 1872; and, that on the sixth day of January following, he assigned and transferred both of these to the complainant, and received the full consideration for his services in procuring and assigning the same, as provided in the agreement of December 12th, 1871.

The bill then charges, that Mason, notwithstanding his trust relative to, and his obligation to hold said patents for the exclusive benefit of the complainant, did, on the 13th of November, 1872, secretly and fraudulently execute a paper, by which he pretended to grant a general right and license to one John K. Chase, to make and use the inventions described in letters patent, Nos. 22,129 and 22,186, together with all extensions and reissues thereof, for the whole of the terms then granted, and thereafter to be granted; that said grant or license was executed to Chase without consideration, and with a full knowledge on his part, that Mason was under obligations to assign the said extensions to complainant, and was received by him in trust, to hold the same for complainant, in the event of Mason's failing to make said assignment, and to deliver up and surrender the same, in case the said Mason in good faith executed his agreement; that Chase, in violation of his trust, refused to deliver the said extended grant or license, to complainant, or to cancel the same, but on the contrary, fraudulently assigned the same to one Henry F. Johnson, by two instruments of transfer, one dated February 27th, 1873, and recorded in the U. S. patent office, June 13th, 1873, and the other dated April 9th, 1873, and recorded as aforesaid, April 16th, 1873; that Johnson afterward made a transfer or assignment of the said license to the Standard Union Manufacturing Company—the said company, having full knowledge and notice of the rights and claims of the complainant therein, and of the fraudulent character of the pretended grant or license: that the said company or some of its officers have entered into an agreement with the defendants, Thomas H. and Samuel A. Whitney, trading as Whitney Brothers, in which they pretend to grant or bestow upon them the right of manufacturing fruit jars containing the improvements secured by the said letters patent, and using the trade marks relating thereto, and by virtue of which, the said Thomas H. and Samuel A. Whitney are extensively engaged in manufacturing and selling fruit jars, embracing the said patented improvements.

The prayer of the bill is, that they be perpetually restrained by injunction, from making and selling fruit jars, containing any of the elements secured by the said letters patent, and from transferring or disposing of any pretended right, privilege or license granted to them by the said Standard Union Manufacturing Company or by the said John L. Mason, or any other persons, and for an account.

Subsequently to the filing of the original bill, an amendment was allowed, setting forth that John L. Mason, acting for himself and for the Standard Union Manufacturing Company, which was entirely under his control, was engaged in the city of Camden, New Jersey, in manufacturing trimmings for fruit jars, and disposing of the same to various fruit jar manufacturers, which trimmings contained the improvements secured by the aforementioned letters patent; that the said Standard Union Manufacturing Company, not only agreed with the Whitney Brothers to bestow upon them the rights under the said pretended grant or license to manufacture fruit jars embracing the said pretended improvements, but claimed and exercises the right to authorize other parties to use the same in New Jersey and elsewhere; and asking that the said Mason and the Standard Union Manufacturing Company, be added as parties defendant in said bill, and in the prayer for injunction and subpoena.

Upon further allegation in the bill, that an action had been instituted in the court of common pleas of the city and county of New York, by the complainant, against John L. Mason, John K. Chase, and Henry F. Johnson, to avoid and set aside the aforesaid grant or license from Mason to Chase, and from Chase to Johnson, and to prevent the said parties from using the rights and privileges thereby pretended to be transferred; and that after appearance, answer and proofs, a final decree had been entered against the said defendants in favor of the complainant, adjudging that the said grant or license from Mason to Chase was made collusively, and was a fraud on the rights of the complainant, and was fraudulent and void; and perpetually enjoining the said Mason, Chase and Johnson, or either of them, from transferring, assigning or in any manner disposing of, or interfering with the said grant or license or using the same; and, that the said Standard Union Manu-

facturing Company, and Thomas H. Whitney and Samuel A. Whitney, had knowledge and notice of said suit, and of the rights and claims of the complainant; an injunction order was issued and served, restraining all the defendants from using the said patented improvements of the complainant, until the further order of the court.

After the defendants had filed their joint and several answer to the bill of complaint, the court heard the motion for a preliminary injunction, and after advisement, granted it against the defendant, John L. Mason, as to letters patent, Nos. 22,129 and 22,186, but refused it as to the other defendants. See 2 Ban. & A. 30 [Case No. 3,133].

A large amount of conflicting testimony has been taken, and the case has been ably and exhaustively argued, by the counsel of the respective parties. No evidence is found impeaching the title of John K. Chase to a license to make and use the lathe chuck, under letters patent No 19,786, and hence no further consideration need be given to the claim of the complainant for the same. With regard to the title of the two other patents, Nos. 22,129 and 22,186, the matter is res adjudicata, as to the defendant, John L. Mason, and John K. Chase and Henry F. Johnson, the parties defendant to the suit in the court of common pleas of the city and county of New York. That was the question determined there, and they are estopped from again controverting it in this court, so long as the decree therein rendered, stands unreversed.

No such estoppel can be pleaded or maintained against the Standard Union Manufacturing Company, Thomas H. Whitney and Samuel A. Whitney, and it remains to consider how the proofs, in the present case, affect these parties. Although careful attention has been given to the various positions maintained by the able counsel on the argument, it is not deemed necessary to dwell upon them in detail, but to briefly state the results and conclusions to which the court has arrived.

It must be borne in mind that, when the agreement of December 12th, 1871, was entered into, Mason was not the owner of the two patents, Nos. 22,129 and 22,186. They then belonged to the Sheet Metal Screw Company, from which corporation the complainant derived its title, by deed of transfer bearing date January 27th, 1872. The parties to that agreement were, in fact, four. (1) Lewis R. Boyd, in his own right and also representing the Sheet Metal Screw Company, in behalf of which he was duly authorized to act; (2) Henry E. Shaffer; (3) Stephen R. Pinckney, William S. Carr and John L. Mason, "each for himself, and jointly, in behalf of the Mason Manufacturing Company;" and (4) Henry C. Wisner. Its object was "to combine their respective interests and business for their mutual benefit," to bring together all the property used by them in destructive business rivalry, and to consolidate the same into one organization. The capital stock of the new company was to be five hundred thousand dollars. Of this, Boyd was to receive $197,500, upon his transferring all of his own property used in the business and also all the property of the Sheet Metal Screw Company. Upon a like transfer, Schaffer was to have $65,500; and when Pinckney, Carr and Mason, had assigned to the proposed organization "all tools, machinery, fixtures, moulds and all letters patent and rights or interests therein belonging to them or either of them, or to the Mason Manufacturing Company," Pinckney was to receive $23,800 in capital stock: Carr, $23,700, and Mason $89,500. The remaining one hundred thousand dollars of the capital stock, was to be made up by a cash subscription.

But although the Sheet Metal Screw Company then owned these patents, its title did not include their renewal or extension. They had less than a year to live, and if they were renewed or extended, in the absence of any contract, the new term would belong to Mason. It was, hence, stipulated in the agreement, that John L. Mason should "use his influence and efforts and services to procure a renewal of all patents heretofore granted to him, expired or unexpired, for the benefit, and at the expense of, the said new company, and that the said company should give to Mason, upon the organization thereof, their promissory note in writing for the sum of $5,000, payable in sixty days after date, for his influence and efforts and services in this behalf; and that all renewals of the letters patent, referred to in the agreement, should be transferred to and form a part of the assets of the said new company," etc.

On the same day that the agreement was entered into, the certificate of incorporation of "The Consolidated Fruit-Jar Company" was drawn up, signed and acknowledged by Boyd, Shaffer, Pinckney, Wisner, Mason and Carr. It was filed in the office of the secretary of state of New York, on the 16th day of the same month and year, and was obviously intended to be in pursuance of the provisions of the said agreement. It is clear from the proofs, that upon the organization of the new company, Mason, who was one of the trustees as well as incorporators, accepted his proportion of the stock, took the consideration to be paid for the renewals of patents expired or unexpired, to wit, $5,000, and also the expenses alleged to have been incurred in obtaining the renewals, to wit, $4,000, and, in short, received all the profits and advantages which could possibly enure to him from the new company by the terms of the agreement. Under these circumstances, it would seem alike inequitable and unconscionable, for a court of

equity, upon any mere technical grounds, to relieve Mason or those claiming under him, from the full surrender of the property which he had agreed to give up, and from the strict performance of the duties and services which he undertook to render in consideration of these pecuniary benefits.

It was set up in the answer, and strongly urged on the argument by one of the counsel of the defendants, that the complainant was not entitled to recover. (1) Because the corporation was not organized by all the parties to the agreement—the Sheet Metal Screw Company and the Mason Manufacturing Company not joining in the certificate; and (2) Because the agreement, in providing for the transfer of property to a corporation not then in existence, was neither binding upon the parties to it, nor on the company when it was afterwards formed.

In regard to the first objection, it is, perhaps, sufficient to say there was no need that these expiring corporations should become parties to the certificate of incorporation, inasmuch as, by the express terms of the agreement, they had authorized their legal agents to turn over all their assets to the new company, and they were to become dissolved as soon as the organization was completed.

And in regard to the second, it may be observed, that the principle, if not the only office of the agreement in these proceedings, is to indicate the intention of the parties in the formation of the new company, and to show that the defendant Mason, and those holding under him, are estopped from claiming certain property, which he had agreed, for, a valuable consideration, to convey to the complainant. In other words, the agreement is not treated as the ground of the right of the complainant to maintain its suit, but as evidence of its right.

The action being maintainable by the complainant, and the matter in controversy, being res adjudicata as to the defendant Mason—is there anything in the evidence as to the origin, or methods and purposes of life of the Standard Union Manufac.uring Company, which authorizes the court to conclude, that that company took the title to these patents without notice or knowledge of the complainant's ownership?

A corporation is an artificial person. It thinks and speaks and acts only in the thoughts, words and actions of the individuals who organize it and direct its proceedings. The sum of its knowledge or intelligence is found in the aggregate knowledge and intelligence of those who give it being and life. The corporators of this organization were David Hannigan, George W. Palmer and Gulian V. Quillard, who acknowledged the certificate of incorporation on the 19th of April, 1873. The seven trustees to manage its concerns for the first year were these corporators, and Henry F. Johnson, William H. De Camp,

George Ross and Isaac G. Speakers. All of these persons, except Johnson and Speakers, who are reported dead, were placed upon the witness stand by the complainant, to testify in regard to the organization and life of this company, and their testimony is quite remarkable.

Hannigan says, that he is not able to state whether he was one of the incorporators or not; that he was a particular friend of Mason's, and if he was one, it was at Mason's solicitation; that he never owned any stock or knew anything about the business of the concern; that at the request of some of the trustees, he purchased the machinery of the factory at Camden, and gave his notes and a mortgage upon the property for $10,000, the amount of the purchase money; that he never paid anything on the purchase, but presumes that Mason has paid; that he resigned his position as trustee about a month after the organization and knows nothing about the company since.

George W. Palmer was the attorney for Mason, in the New York suit, and drew the answer for him—the suit having been commenced and a temporary injunction granted against Mason on the 11th of April—more than a week before Palmer signed the certificate of incorporation of this company. He never owned any of the stock, although he was the first president of the board of trustees, and held the position for several months —Mason being the general superintendent of the concern and succeeding him as president. So far as the company had any office or place of business in New York, it was at the law office of Palmer & De Camp, at 318 Broadway. He does not know who the treasurer of the company was, nor where its funds were kept, while he was president, and thinks that "pretty much all of the $500,000 of stock was issued for patent rights."

Quillard, the remaining corporator, testifies, that he was the only real and regular secretary the company ever had, and was also a trustee; that he held $5,000 of the stock at one time, which was given to him by Mason, "without any consideration or bargain whatever," and, that he afterwards returned the same to him. He further states, that there has been no meeting of the company since June, 1874; that Mason has been the president and manager, and conducted the business without the supervision of the board of trustees, or any one else.

Johnson was not put upon the stand by either party; but Chase says, that he assigned the license to use the patented improvements in dispute to Johnson at the request of Mason; that he (Chase) first suggested the idea of a corporation to hold the title, and that Mason agreed to it, that he received $20,000 in the stock of the new company, for the transfer, which, however, he afterward sold for $100, and that he backed out from being one of the corporators,

·when "he thought things were not going right."

George Ross, another of the trustees, was never a stockholder, and does not recollect that he was present at the organization of the company. He has never had any knowledge about its affairs, transactions and business. He loaned some money to it, and took a mortgage from Mason, on property owned by him, as security for payment of the loan, and has tried to find out something about the company, as he wants his money back.

The foregoing is a synopsis of a large amount of testimony of the same general sort, from trustees and other officers of the corporation, and, after its fair consideration, the conclusion is quite irresistible that the formation of the Standard Union Manufacturing Company was a scheme of Mason, with his aiders and abettors, to evade the injunction of the court of common pleas of the city county of New York, which restrained him from the open use of these patents; and that it is the duty of this court to protect the real owners against all such fraudulent devices.

3. Whatever rights the defendants Thomas H. Whitney and Samuel A. Whitney had in these patents, were obtained from the Standard Union Manufacturing Company. They were authorized to use the patented improvements by virtue of the agreement executed in December, 1873, by Mr. Synott, representing the Whitneys of the one part, and Mason, representing the company, of the other. In such a transfer of personal property, the maxim caveat emptor applies, and although the good faith of the Whitneys has not been impeached, they could not, under the circumstances, acquire any rights which their vendor did not have. Assuming that the Whitney Brothers were innocent purchasers, and remembering that the complainant, by its ostensibly unconditional assignment of the patents to Mason, put him in a position to enter into the agreement with the Whitneys, it is doubtful whether the complainant ought to be permitted to hold these defendants responsible for the use of the patents, before they received actual notice of its claim, and of the lack of title in Mason; but after such notice they proceeded at their peril, and assumed the legal consequences of their acts. This notice was given by the president of the complainant corporation, January 27th, 1874, and subsequently by a copy of the injunction ordered against Mason by the court in New York, in the pending suit, forwarded to them in a letter dated February 28th, 1874.

There must be a decree in favor of the complainant, for a perpetual injunction against all the defendants, and also a reference for an account against Thomas H. Whitney and Samuel A. Whitney, and for damages, according to the prayer of the bill.